Good morning, Your Honors. We are here today because the BIA, in reversing the immigration judge's second grant of asylum, has violated the law and impermissibly exceeded the bounds of its authority by first violating the corroboration statute, usurping the IJ's role as a sole trier of fact, and second, by violating its own regulations and making factual findings in reaching its decision. To correct this error, this Court, at minimum, should reverse and remand the case to the Board for application of the correct legal standard. The Court's decision states that the respondent failed to meet his burden of proof because he did not provide sufficient corroborating evidence. The BIA's decision cites to a decision from this Court that is distinguishable because the immigration judge in this case did not make the determination that the applicant must provide corroborating evidence and failed to do so. The statute does not mandate that an applicant must provide corroborating evidence or that an immigration judge must ask an applicant to provide it. The statute codified the requirements the BIA lays out in matter of SMJ, which this Court relies on in reaching its decision in El Sheikh. The statute gives authority to the trier of fact to determine if an applicant should provide evidence to corroborate their credible testimony. Congress understood that applicants may not have evidence to corroborate their otherwise credible testimony, which is why it states that an applicant who cannot reasonably provide corroboration may explain why to the immigration judge, and the immigration judge then may determine if that explanation is reasonable or not. As this Court outlines in El Sheikh, a particular decision denying asylum based on a lack of corroborating evidence cannot be sustained if they fail to rule explicitly on the credibility of the testimony, explain why it was reasonable in this case to expect additional corroboration, and assess the reasonableness of the applicant's explanations for the absence of corroborating evidence. This standard remains good law after the REAL ID Act, as the REAL SMJ, which the BIA states in matter of LAC. Because the BIA usurped the immigration judge's statutory authority and made the determination in the first instance that corroborating evidence should have been provided, Mr. Uzidinma was not provided an opportunity to explain the absence of such evidence, and the immigration judge in turn was not afforded the opportunity to assess the reasonableness of such explanations. What about the government's argument that setting all that aside, the board independently said that the alien didn't demonstrate that he faced a particular threat of persecution in light of the fairly large population? I didn't, I'm not sure I even saw that addressed in your red brief, I mean your reply brief. Well, your honor, if you look at the BIA's decision on AR page 4, the BIA states that Mr. Uzidinma does not face a particular threat of persecution on account of the large Igbo and pro-biafran people. First, I would like to call to your attention that the immigration judge found that he is a pro-biafran supporter and a pro-LGBT community supporter, so there are two protected grounds, and in the last paragraph of the BIA decision, they only cite to pro-biafran, and they highlight that there is not a particular threat of persecution, but if you look at AR page 121, the immigration judge found a pattern of practice and found that the respondent is a part of those communities and that the Nigerian government has a capability and inclination to punish the respondent under those, being a part of those groups. Well, the government says you didn't raise a pattern of practice argument in your brief. Well, your honor, while we didn't say pattern of practice, we did say that the BIA has ignored the factual findings of the immigration judge in reaching its decision, and if you look at the last paragraph, the factual errors are in that paragraph as well. The decision cannot be sustained based on what they have written in the last paragraph, because it's also infected with their legal error. Well, normally, I would think if you're going to argue pattern of practice, you can't just refer generally to factual errors. You would have to point out that particular issue, wouldn't you? Well, your honor, I don't think we're arguing pattern of practice because... Oh, you're not arguing. No, but in regards to the government's argument that we failed to raise pattern of practice, to us, in the immigration judge's decision, we're not calling that part out. The BIA didn't say that the immigration judge failed to find a pattern of practice. The BIA said that they failed to show a particularized threat, and under the regulation 1208.1, under the well-founded fear definition, an immigration judge can find under two grounds whether there's a well-founded fear, under an individualized threat or a pattern of practice, and in the BIA's decision, they're saying that she failed to show an individualized threat. Beyond their determination that Mr. Isidema failed to sufficiently corroborate his credible testimony, the board again acted as the trier of fact when it ignored the immigration judge's findings of fact, so finding those facts for their own. The BIA at AR page 4 says that Mr. Isidema failed to provide no objective evidence of his experiences and no objective evidence that he shared his political opinions with anyone. The board also states at AR 4 that quote, on review of the record, the respondent alleges he posted his political opinions on Facebook, end quote. This is not an allegation for the board to assess. This is a factual finding by the immigration judge. At AR 122, the immigration judge finds that Mr. Isidema is a supporter of the Biafran state and the LGBTQ community, a characteristic the Nigerian government seeks to overcome through means of punishment. At 122 as well in the AR, the IJ says the Nigerian government could become aware or is aware that he possesses his political beliefs based on his social media activity. The BIA also contradicts the immigration judge's testimony or statement or reasonably available evidence to corroborate his claim fear of future harm in Nigeria. The BIA fails to address why the immigration judge's factual findings relying on specific testimony and statements was clearly erroneous. At AR 122, the immigration judge found that the Nigerian government has the capability and inclination to punish Mr. Isidema for his actions. Well, does this mean that any supporter of the Biafran state who states that view on Facebook is entitled to asylum? Well, Your Honor, I'm unsure if you could say every person, but Mr. Isidema, who's a pro-Biafran supporter and a pro-LGBTQ community supporter, and based on how active he was on social media, the immigration judge found that the facts support a grant of asylum. I know what the immigration judge found, but I'm trying to understand the implications of your position. And it seems that you may be saying that it's an across-the-board rule. It's not particularized to this certain person. There's nothing about the record that shows they're after this particular person. Just the mere fact that he has a view about the Biafran people and he puts it on Facebook entitles him to asylum. I just want to understand if that's the implication of your position, that anybody who does that would be entitled to the same result or whether there has to be more particularized evidence about the individual alien. Well, Your Honor, I don't think that's what the regulations say. The regulations say that you can show individualized persecution to meet the well-founded fear, but it also is an alternative ground as the pattern or practice to show that the individual belongs to that group. And so under the regulations, it seems that yes, if someone is in a similarly situated position as Mr. Uzidema, they would be eligible for asylum. I'll ask the question a little differently. The burden's on him the whole time, right, to show a particularized threat of persecution? Yes, Your Honor. And the BIA can look at the record and see if that was met, right? Yes, Your Honor. Okay. Did the BIA do any more than that here? Yes, Your Honor. The BIA went into the evidence and found facts that directly contradict what the immigration judge found. The BIA should have found clear error if they've... It's back to what you said, so thank you. Yes, Your Honor. Did the full 15 minutes elapse or did you only put 10 up? Ten. Ten. Ten, Your Honor. Ten. All right. All right. Thank you for your time. All right. Ms. Conrad, we'll hear from you. Thank you, Your Honor. May it please the Court, my name is Dawn Conrad and I'm here today on behalf of the U.S. Attorney General. In this case, the Board properly found that Petitioner failed to meet his burden of proof for asylum and the record does not compel reversal of this determination. The Board properly found that Petitioner did not demonstrate a particularized threat of persecution in light of the large number of Igbo and pro-Biafra supporters in Nigeria. This determination is supported by substantial evidence in the record and is dispositive of this petition. He did not demonstrate that anyone in the Nigerian government is aware of his beliefs or has threatened to harm him or that he will be singled out for persecution. It is within the Board's de novo review authority to determine if an applicant has met the legal requirements of his claim. The applicant must provide evidence that there is a reasonable possibility that he will be singled out individually for persecution or he can establish that there's a pattern of practice. But in this case, they have waived that claim by not raising it in their brief to this Court. And so we don't have the pattern of practice issue before the Court. Whether there was a pattern or practice of persecution against all members, supporters of the Biafra cause or LGBTQ supporters. That would be a separate theory you're saying. Correct. Separate from one theory. Correct. Of being singled out for persecution. That you specifically. Do you think the immigration judge relied on a pattern or practice theory? It's hard to tell from her decision exactly because she doesn't use those words exactly and usually when you do have a pattern or practice claim, you do see them use those words. But it would appear so from her findings. She says the Nigerian government has the capability and the inclination to punish the respondent. Do you think that's a finding that there was an inclination to punish, single him out so to speak? Or you think that's a, what do you think that means? It seems to be that, based on her other statements, I think she says. She does in the next sentence just talk more generally about supporters of the Biafran state.  She talks more. Which makes it sound more like a pattern or practice. Right. I mean, she does note that respondent testified that he expressed his support of these causes groups on social media, including Facebook. Which makes it maybe look a little more like it was a singular determination. But she's, her country conditions evidence she's relying on is more general. I will say that. It is mainly, it involves a group called the Indigenous Peoples of Biafra, which Petitioner hasn't even shown that he's a member of. And these are people that are participating in demonstrations and protests and marches in Nigeria. And they're the ones who are arrested and mistreated by the Nigerian government. But in any event, we don't have a pattern or practice claim before this court because they have not raised it in their briefing before this court. We also. Just for a moment. Yeah. Was the board under an obligation to explain why it was reasonable to expect additional corroboration? No. Because right here they're not making a separate corroboration finding. They're just making a burden of proof finding. And under the burden of, when their burden of proof. I'll interrupt you again by saying, at no point, did the board at any point insist upon further corroboration? No. They're not making that finding. What they're doing is they're saying, looking at the record that we have before the immigration judge and the corroboration that he did submit, this is not sufficient to meet his burden of proof. Well, but the immigration judge made a factual finding based on the testimony of the alien and the mother's affidavit and said, I find such and such. That's correct. Isn't the board saying, is the board really accepting those facts then? Or is the board saying, we're not going to take those as given because there's not corroboration? The board seems to think that they're not going to give, and this could be where there might be a little error with the proper standard of review. The board says that there's no objective evidence of the respondent's experiences and no objective evidence that the respondent has stated his political opinion to other persons. But the mother's affidavit said both things. And the board doesn't exactly explain why the mother's affidavit isn't objective. I think what they're trying to... Or whether it's objective or not, there was a factual finding. That's a factual finding. Correct. And the board did say, considering all the circumstances, it was reasonable to expect the respondent to obtain documentation. Why did it make that statement, and of what relevance was it? I think it's just looking at everything that was submitted in the case and considering that everything that was submitted in the case, nothing shows this specific, particularized fact that he needed to submit other evidence to meet his burden. I think they're just saying that he did not meet his burden with the corroboration he submitted, and this is why. And I think... Do you think this possible error about objective evidence requires a remand, or would there be, in your view, a way to say there was error there and nonetheless uphold the decision? That's correct, Your Honor. We would argue that... What's correct? I'm sorry. That it's harmless error. Why? Because the ultimate legal conclusion of the board is correct, and there's no evidence in the record showing that there's a particularized threat of persecution in light of this large population of pro-Biafran and Igbo, members of the Igbo ethnicity. And that is because, even assuming everything the mother says in her affidavit is true, all it notes is that he wrote his opinions or stated his opinions on social media. But we still don't know that anyone actually knows that he stated those opinions. I mean, anyone in the government knows that he stated those opinions, or there's no evidence that they... That they may become aware. Right. I think it's stronger than may. It was... I get maybe it was a could. Something like that, Your Honor. Could. Could become aware. But even if that's true, we still don't also have evidence that people are persecuted because of their putting their statements on Facebook about the Biafran movement. That's maybe what it comes down to. Yes. I mean... What did the IJ say about that? The IJ did not address that, that I know of. You mean Facebook didn't address Facebook at all? Whether someone would be persecuted for posting on Facebook. She does say that sentence about inclination to punish. Right. But whether that's particularized... But she doesn't state what evidence she's relying on that, besides the general country conditioned evidence that members of that community... Right. That's all she has in that paragraph. It's country condition and evidence about imprisonment and torture of LGBTQ supporters. Where does that evidence come from? Is that also country? Yes. That's just country conditions evidence. So we would argue that the board's ultimate legal conclusion that Petitioner failed to burden a proof because he failed to demonstrate a particularized threat of persecution is supported by substantial evidence and the record does not compel an alternative finding. We'd also argue that Petitioner tries to raise a due process claim, but he did have two merits hearings before the immigration court where he was able to submit testimony and evidence. And he's not shown how he was not given all the process that is required. And also in this court's decision in Wanyama, which is quoting, I'm horrible with the pronunciation, a decision in Oblashenko, this court held that non-citizens do not have a constitutionally protected liberty or property interest in receiving asylum because it is a statutorily created relief that is subject to the unfettered discretion of government authority. What specifically did the board say with respect to the IJ's determination of credibility? The board upheld her determination of credibility. They did not find it clearly erroneous. But what did it find lacking then? The board found that looking at the record overall, it did not meet the burden of proof to show an objectively reasonable, well-founded fear of persecution. And did the board in any way hint that there might have been corroborating evidence that would have been available or presentable, but the petitioner just failed to present it? I mean, the board stated it was reasonable to expect the respondent to obtain documentation that would corroborate his claim, fear of future harm. Did that give us leeway to remand for presentation of that evidence? No, because I don't think that's what the board is saying here. I think the board is not making a finding like, you would have met this burden had you submitted this evidence. Because the board is looking at what was submitted already and making a burden of proof finding, which the board has the ability to do so. Do you agree with the alien's briefs that the corroborating evidence issue is really for the immigration judge rather than for the petitioner? I believe the statute says the trier of fact has to make that determination. If there are no further questions, we'll submit. Thank you. Very well. Thank you for your argument. Ms. Cardona, we'll hear from you in rebuttal. Sorry, just one second. Good morning, your honors, and may it please the court. First off, I'd like to begin making some points on rebuttal that the government has mischaracterized. First to you, Judge Wollman, you asked about the BIA's determination that it was reasonable to expect the petitioner to provide more corroborating evidence, and I'd like to address that in saying that this is actually another piece of our argument that the BIA was engaging once more in erroneous fact finding, because this determination of reasonableness is a for clear error. That was actually a determination that the BIA made without the IJ having ever found anything in relation to whether it would be reasonable or not to expect more corroborating evidence. The BIA found this. So this is a Ramirez-Perot situation where the IJ does not make any determination relating to certain facts. The BIA comes in, and out of their analysis, but on a no analysis of what the facts were that the IJ found, makes this determination. So that is one of the examples of the erroneous fact finding, and now I would like to get into some more. The government is trying to reframe this issue as a burden of proof issue. However, that is not what's actually at stake in this case. What has happened in this case is that the IJ's factual findings have been displaced by the BIA, and by this displacement, the BIA has then, on their own facts, determined that Mr. Buzidinma did not meet his burden of proof. That is not an analysis that was based on clear error. They said they were reviewing De Novo, whether he met his well-founded fear, which they would of course be permitted to do, had they taken the IJ's facts as found as true, or in the alternative, analyzed them as clearly erroneous, explained why they were clearly erroneous, and then gone through that analysis. So let me ask you this. Sure. Do you think that insofar as the board did what you're alleging, they did it only with respect to the evidence about what he put on Facebook and whether he's a supporter of the movement and so forth, but when it came to the particularized threat, there weren't any findings of the IJ disregarded? I think that's, if I understood the government's position, that's, that was sort of the harmless error suggestion. Could you address that? Of course. So regarding the particularized threat piece that the BIA analyzed, in our understanding of 1208.13, there are two alternative grounds upon which to find well-founded fear of future persecution. It's not necessary to find a particularized or individualized harm. You can also find that there is a pattern or practice, and while the IJ may not have said those specific magic words, she indicated that throughout all of her decision. For example, she stated, on AR-122, the Nigerian government has the capability and inclination, as you stated, Judge Colton. She also found that the country condition information on the record supports that the Biafran supporters are unlawfully arrested, detained, or killed. The country condition evidence also shows that the Nigerian law enforcement officers have tortured and imprisoned members and supporters of the LGBTQ community. So through this, we infer, and we think it's quite apparent through the full analysis of her decision, despite not using the magic words, she was making a pattern and practice analysis. But regardless, this can be, this should, at a minimum, be remanded because the decision is not clear regarding what the BIA was doing. They stated that... Well, the government says that pattern and practice was not raised properly in the appellate briefs, and therefore it's waived. So, oh, I'm not taking a position on that right now, but assume that's correct for a minute. Do you have an argument about particularized threat? Because you said there are two ways under 1208.13a, and then you went with pattern or practice. Do you think the case rises or falls on pattern or practice, or do you think there's an argument that the board was wrong on what it said about particularized threat? Yeah, we absolutely do not believe that it rises or falls on that. We believe that what the BIA did came down to the fact that they didn't analyze the facts as found. And had they analyzed the facts as found, they may have found a particularized threat, but we just do not know because the BIA displaced the IJ's facts, did not, while they found a positive credibility determination, did not actually give any weight to the testimony that was given because she did say, or sorry, the board did say there is no evidence that he has stated his experiences or stated his political opinions to anyone. And these are just very broad statements that are directly contradicted by the IJ's determinations, factual conclusions, factual findings, I'm sorry, on AR-122 and 121 versus the BIA's on AR-4. So based upon these findings that the BIA made, they concluded there is no particularized harm. However, had they taken the IJ on her findings of fact, as it is supposed to, we have no idea if they would have made the same determination, and at a minimum, this deserves a remand. I apologize for going over, Your Honors. Well thank you for your argument. Thank you. Thank you to all the advocates for your presentations. The case is submitted and the court will file an opinion in due course. That concludes the argument calendar for this morning. The court will be in recess until 830 tomorrow morning.